## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT COURT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** *ex rel* **TANGELA ALEXANDER, RELATOR,** | * | **CIVIL ACTION NO.: 5:23-cv-193** |
| | | **SECTION:** |
| **and** | | **JUDGE:** |
| **STATE OF LOUISIANA AND LOUISIANA DEPARTMENT OF HEALTH** *ex rel* **TANGELA ALEXANDER, QUI TAM PLAINTIFF** | | **MAGISTRATE:** |
| *Plaintiffs* | | |
| **VERSUS** | * | **QUI TAM COMPLAINT UNDER THE FEDERAL FALSE CLAIMS ACT** |
| **COMMUNITY HEALTH CARE SOLUTIONS, LLC, YOLANDA BURNOM, AND THE ESTATE OF YOLANDA BURNOM** | * | **JURY TRIAL REQUESTED** |
| *Defendants* | | **FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# FILED IN CAMERA AND UNDER SEAL

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT COURT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** *ex rel* **TANGELA ALEXANDER, RELATOR,** | \* | **CIVIL ACTION NO.: 5:23-cv-193** |
| | | **SECTION:** |
| **and** | | **JUDGE:** |
| **STATE OF LOUISIANA AND LOUISIANA DEPARTMENT OF HEALTH** *ex rel* **TANGELA ALEXANDER, QUI TAM PLAINTIFF** | | **MAGISTRATE:** |
| *Plaintiffs* | | |
| **VERSUS** | \* | **QUI TAM COMPLAINT UNDER THE FEDERAL FALSE CLAIMS ACT** |
| **COMMUNITY HEALTH CARE SOLUTIONS, LLC AND YOLANDA BURNOM** | \* | **JURY TRIAL REQUESTED** |
| *Defendants* | | **FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** |

*******************

### ORIGINAL COMPLAINT UNDER THE FALSE CLAIMS ACT AND THE LOUISIANA MEDICAL ASSISTANCE PROGRAMS INTEGRITY LAW

This is an action by *qui tam* Relator Tangela Alexander ("Relator"), through the undersigned counsel, made on behalf of herself and the United States of America ("United States"), its departments and agencies, including the Department of Health and Human Services ("DHHS"), and the State of Louisiana and the Louisiana Department of Health ("LDH"), against Defendants Community Health Care Solutions, LLC ("Community Health"), Yolanda Burnom, and the Estate of Yolanda Burnom (collectively, the "Defendants") pursuant to the federal False Claims Act, 31 U.S.C. § 3729 *et. seq.* ("FCA") and the Louisiana Medical Assistance Programs

Integrity Law, La. R.S. 46:439.1 *et seq.* ("MAPIL"), to recover all damages, penalties, and other relief available under the law.

Pursuant to the FCA, this Complaint is filed *in camera* and under seal, and is to remain under seal for at least 60 days, and shall not be served on the Defendants until the Court so orders. Under the MAPIL, the Complaint must remain under seal for at least 90 days. The United States and the State of Louisiana may elect to intervene and proceed with the action within their respective time periods as set forth under the applicable statutes after they receive the Complaint and Disclosure Statement submitted to them, or within any extensions of that initial seal periods granted by the Court for good cause shown.

For her cause of action, Relator alleges as follows:

## **INTRODUCTION**

1.      Community Health and Yolanda Burnom knowingly obtained substantial funds from government healthcare programs, primarily Medicaid, through false and improper misrepresentations and filing of false claims and false statements. In addition, the Defendants were subjected to certain administrative rules, regulations, and billing protocols, which required them and those for whom they were legally responsible to conform and comply with all terms and conditions. However, the Defendants, through their agents and employees who were under the direct supervision and control of the Defendants, engaged in and committed improper acts and violations of law relating to their provision of health care services, including improper phantom billing (i.e., billing for services not provided), false and improper certifications, misrepresentations, providing false information, and other improper acts and conduct in violation of laws and duties owed to the United States and Louisiana governments, governmental Third

Party Administrators (TPAs), Medicaid and Medicare insurers, and their insureds and beneficiaries.

2.      Specifically, Community Health and Burnom intentionally and routinely billed for purported mental health and counseling services that were not actually provided, as well as services for patients that were wrongfully referred to and signed up by the Defendants in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), and therefore the services billed by the Defendants were not properly chargeable to or payable by government health insurance plans. All of these improper billings were done with the knowledge of and at the direction of the Defendants for the purpose of obtaining reimbursement for services that the Defendants knew were not actually provided and/or which were provided in violation of the Anti-Kickback Statute . Such billing constituted improper, false, and fraudulent billing to the United States and Louisiana governments for services purportedly being provided primarily to beneficiaries of Medicaid and other government funded health plans.

3.      The Defendants knowingly and intentionally prepared and submitted such improper, false, and fraudulent bills as part of a scheme to obtain payments in excess of $13.5 million from the federal and state governments that were not properly owed to the Defendants.

4.      The Defendants knowingly caused to be submitted bills for services not rendered and/or rendered in violation of the Anti-Kickback Statute, with each such instance of billing constituting a separate and new violation under United States and Louisiana laws, including but not limited to the FCA, 31 U.S.C. § 3729 *et seq.* and the MAPIL, La. R.S. 46:439.1 *et seq.* thereby making the Defendants liable for mandatory penalties of not less than $13,508.00 nor more than $27,018.00 for each such act. 28 C.F.R. § 85.5.

5.     Further, the Defendants' actions were committed under circumstances in which the Defendants possessed actual knowledge that patients were retained in violation of the Anti-Kickback Statute and that such patients were not provided the services represented by the improper billings, but instead the Defendants knew that those charges represented services that were not reimbursable, thereby defrauding and misleading the United States and Louisiana governments and the beneficiaries of those government programs. The Defendants improperly financially profited and benefited from their wrongful acts. As such, the Defendants should be not only required to return all payment received from their improper billing for such services and subjected to related penalties for each such act wherein they billed for such services, but the Defendants should also be disgorged of any profits realized from their conduct.

6.     The Relator discovered the Defendants' fraudulent conduct during her employment with the Defendants, which began in June 2017. After identifying the nature of the fraud, the Relator reached out to investigators to report the fraud in November 2017. She continued her communications with Louisiana and federal investigative agencies and provided documents and information throughout 2018 and thereafter to report the fraud and provide evidence to support an investigation into the Defendants' conduct. As a result of the Relator's efforts and communications to Louisiana and federal investigative agencies, the Relator is the original source of the information both in this Complaint as well as in the criminal proceedings that were instituted by the United States based on the information provided by the Relator regarding the Defendants' wrongful conduct.

7.     After her initial communications with investigative agencies regarding the Defendants' conduct, the Relator continued cooperating with those agencies and provided additional

information and documents to assist in the ongoing investigation. As a direct result of the Relator's reporting of the fraud, providing information to investigators, and ongoing cooperation with the investigation, on September 28, 2022, Burnom and another individual, Chassidy Bell, who worked for and assisted the Defendants in the scheme, were indicted for these fraudulent acts. At the time of the filing of this Complaint, that criminal proceeding is pending in the U.S. District Court for the Western District of Louisiana as *USA v. Burnom et al*, Case No. 5:22-cr-00240-SMH-MLH. If not for the Relator coming forward and reporting the Defendants' fraudulent conduct, the federal government would not have learned of these wrongful acts and the Defendants would have continued to wrongfully obtain Medicaid funds in violation of Louisiana and federal laws.

## NATURE OF ACTION

8.      This is an action to recover treble damages, civil penalties, and all other recovery provided under the FCA, 31 U.S.C. § 3729 *et seq.*, and MAPIL, La. R.S. 46:439.1 *et seq.*, as well as an action for relief, including two times back pay with interest, litigation costs and attorney fees, exemplary damages, and all other recoverable damages, under the respective whistleblower provisions of those acts, 31 U.S.C. § 3730(h) and La. R.S. 46:440.3.

9.      Under the FCA, a private person may bring an action in federal district court for herself and for the United States, and may share in any recovery. 31 U.S.C. § 3730(b). Similarly, under Louisiana law, a private person may bring an action to prosecute a violation of the MAPIL for herself and the State of Louisiana, and may share in any recovery. La. R.S. 46:439.1 *et seq.* Under the federal FCA and Louisiana law, the action is called a "qui tam action." Under the FCA, the private person who files a qui tam action is a "Relator," while under Louisiana law that person is

a "qui tam plaintiff." In this Complaint, the use of the term "Relator" is intended to refer to Tangela Alexander as both a federal "Relator" and a Louisiana "qui tam plaintiff."

## PARTIES

10.     Relator Tangela Alexander has worked in the health care industry for approximately 13 years, since 2010. The primary focus of her career includes serving as a primary caregiver. The Relator has also received education and training in the field of business and medicine, and in 2021 obtained MBAs in Business Administration and Health Administration.

11.     The Relator is a citizen of the United States and a resident of the State of Texas. She was employed by Defendants Community Health and Yolanda Burnom for approximately four months from June 2017 until September 2017.

12.     The Relator brings this action on her own behalf, and on behalf of, and in the name of, the United States, by and through its agency, the DHHS, particularly the Centers for Medicare & Medicaid Services ("CMS"), and all other federal healthcare programs.

13.     The Relator also brings this action on behalf of, and in the name of, the State of Louisiana, by and through its agency the LDH, which is responsible for operating the Louisiana Medicaid Program.

14.     The Relator has made voluntary disclosures to the government regarding this suit as required by 31 U.S.C. §3730(b)(2).

15.     The allegations in this Complaint are based upon similar facts and circumstances as the above described criminal proceedings pending in the Western District of Louisiana, which arose out of and are based upon the information and documents provided by the Realtor to appropriate Louisiana and federal investigative agencies. Thus, the Relator was the "original source," within

the meaning of the FCA, 31 U.S.C. § 3730(e)(4)(B), of the information that led to the government's investigation of the Defendants' wrongful conduct at issue both in the pending criminal proceeding as well as in this Complaint.

16.     Defendant Community Health is a limited liability company registered under the laws of the state of Louisiana.

17.     At all times pertinent to the allegations of this Complaint, Defendant Yolanda Burnom is a United States citizen and a resident of the State of Louisiana. Upon information and belief, Burnom is deceased, and her estate is liable for any liabilities arising from her conduct in this matter.

18.     At all times pertinent to the allegations of this Complaint, Burnom was the registered agent, sole officer, owner, and operator of Community Health.

19.     During her employment with Community Health and Yolanda Burnom, the Relator was assigned to work as a mental health counselor. As part of her job duties, the Relator was tasked by the Defendants with signing up patients to receive mental health counseling and other mental health services, and she also was required to visit with patients to provide counseling.

20.     During the course of her period of employment with the Defendants, the Relator came to understand that the business operated by the Defendants was a scam, that the patients who were being signed up by the Defendants were being obtained through kick-back referral schemes, and that the services that were being promised to patients and which were being billed to government health insurance plans were not actually being provided by the Defendants.

21.     On occasion, the Relator was instructed by the Defendants to sign up as patients individuals in the community who may not have had a particular need for mental health or counseling services,

and she was further instructed to document visits where no mental health treatment or counseling services were actually provided.

22.     After realizing the nature and significance of what she was being instructed to do, the Relator quit working for the Defendants in or around September 2017.

23.     Beginning November 2017 and continuing throughout 2022, the Relator reported the Defendants' wrongful and fraudulent conduct and provided documents and information to Louisiana and federal law enforcement and investigatory agencies regarding the wrongful acts and violations being committed by the Defendants. Because of the documents and information provided by the Relator, criminal proceedings were initiated by the United States against Ms. Burnom and Chassidy Bell, who worked with and assisted the Defendants in the scheme.

## JURISDICTION

24.     This Court has subject matter jurisdiction to adjudicate this action under 28 U.S.C. § 1331 because this action arises under the laws of the United States and is brought pursuant to 31 U.S.C. 3730(b) by the Relator on behalf of herself and on behalf of the United States government.

25.     Further, under 31 U.S.C. § 3732, this Court specifically has jurisdiction over actions brought under the FCA and concurrent jurisdiction over state claims arising from the transactions giving rise under the FCA.

26.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over all other claims set forth in this Complaint because these claims are so related to the claims arising under the federal FCA that they form part of the same case or controversy.

## VENUE

27.     Venue lies in this district under 31 U.S.C. § 3732 because one or more of the Defendants transact business in this district. Venue is also proper pursuant to 28 U.S.C. § 1391(b) and (c) because the Defendants transacted business in Bossier and Caddo Parishes, which are within this district. Specifically, Community Health is domiciled in and transacts business in this venue, and Ms. Burnom also resides in Caddo Parish, which is within this district.

## THE FALSE CLAIMS ACT

28.     The FCA provides, in pertinent part:

(a) Liability for certain acts.--

(1) In general.--Subject to paragraph (2), any person who--

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G);

(D) has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property;

(E) is authorized to make or deliver a document certifying receipt of property used, or to be used, by the Government and, intending to defraud the Government, makes or delivers the receipt without completely knowing that the information on the receipt is true;

(F) knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the Government, or a member of the Armed Forces, who lawfully may not sell or pledge property; or

(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410), plus 3 times the amount of damages which the Government sustains because of the act of that person.

*        *        *

(3) Costs of civil actions.—A person violating this subsection shall also be liable to the United States Government for the costs of a civil action brought to recover any such penalty or damages.

31 U.S.C. § 3729.

29.    The amount of civil penalties has been increased by amendments. Penalties under the FCA that are assessed after January 30, 2023, for violations occurring after November 2, 2015, are currently set at a minimum of $13,508.00 and a maximum of $27,018.00 per claim. 28 C.F.R. § 85.5.

### THE FEDERAL INSURANCE PROGRAMS[1]

30.    During the time periods at issue in this Complaint, the Defendants wrongfully derived substantial funds from the Louisiana Medicaid Program, totaling over $13.5 million since 2017 based on the investigations that were conducted by the government as a direct result of the Relator's report of the fraud.

31.    Title XIX of the Social Security Act was enacted by Congress in 1965 to establish the Medicaid Program. *See* 42 U.S.C. §§ 1396 *et seq.* Medicaid is funded by both federal and state money, with the federal contribution determined separately for each state. *See* 42 U.S.C. §§ 1396d, 1396d(b).

---

[1] Although the Relator believes that the most significant portion of the Defendants' fraud was directed toward the Louisiana Medicaid program, upon information and belief the Defendants also submitted false and fraudulent claims for reimbursement to other federal healthcare programs, including Medicare. Thus, although this Complaint is focused on the claims against the Medicaid program, the allegations also apply to the other government healthcare programs, which were similarly defrauded.

32.    The Medicaid Program provides funding for medical and health-related services for certain individuals and families with low incomes and virtually no financial resources. Those eligible for Medicaid include low-income individuals and families, pregnant women, children, and persons with disabilities, among others. 42 U.S.C. § 1396d. The Medicaid program is a joint federal-state program. 42 U.S.C. § 1396b. If a state elects to participate in the program, the costs of Medicaid are shared between the state and the federal government. 42 U.S.C. § 1396a(a)(2). To receive federal funding, a participating state must comply with requirements imposed by the Social Security Act and regulations promulgated thereunder. The Medicaid Program is governed by the regulations contained in Title 42 of the Code of Federal Regulations, Chapter IV, Subchapter C.

33.    The State of Louisiana participates in the Medicaid Program pursuant to La. R.S. 46:153 *et seq*. According to Chapter 1 of the Louisiana Medicaid Services Manual: "Funding for the Medicaid Program is shared between the federal government and the state. The federal government matches Louisiana's share of program funding at an authorized rate between 50 and 90 percent, depending on the program. The contribution for the federal government is adjusted annually based on the per capita income of the state comparative to the nation as a whole."[2]

34.    In return for receipt of federal subsidies, the State of Louisiana is required to administer its Medicaid program in conformity with a state plan that satisfies the requirements of the Social Security Act and accompanying regulations. 42 U.S.C. §§ 1396 *et seq*. The LDH is responsible for managing the Louisiana Medicaid Program for the State of Louisiana.

35.    Providers who wish to supply health care services to Medicaid eligible recipients must enroll to participate in Louisiana Medicaid and meet other licensing and certification requirements

---

[2] Louisiana Medicaid Services Manual, Chapter 1, Section 1.0, "Introduction."

in accordance with state and federal law. When enrolling with Louisiana Medicaid, a Provider enters into a provider agreement with DHH in which the Provider agrees, among other things, that it will:

- Comply with all federal and state laws and regulations;

- Provide goods, services and supplies which are medically necessary in the scope and quality fitting the appropriate standard of care; and

- Report and refund any and all overpayments.

Louisiana Medicaid Services Manual, Chapter 1, Section 1.1, "Provider Requirements"; La. R.S. 46:437.11-437.14.

36.     The LDH publishes a Medicaid Services Manual, which provides guidelines and requirements for Medicaid providers. Chapter 2 of the Medicaid Services Manual is entitled "Behavioral Health Services Provider Manual." That Chapter requires that, in order to be eligible for reimbursement under the Medicaid program, "[a]ll mental health services must be medically necessary in accordance with LAC 50:I.1101." Louisiana Medicaid Services Manual, Chapter 2, Section 2.3, "Outpatient Services."

37.     Although Louisiana's Medicaid Program is managed by the State of Louisiana, fraud committed against a state Medicaid Program also constitutes a violation of the FCA. *U.S. ex rel. Tyson v. Amerigroup Illinois, Inc.*, 2005 WL 2667207, at *2 (N.D. Ill. Oct. 17, 2005).

38.     Compliance with the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), is also a condition of payment under Medicaid.

39.     The Anti-Kickback Statute makes it unlawful to knowingly and willfully "offer[] or pay[] remuneration (including any kickback, bribe, or rebate) . . . to any person to induce such person (A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item

or service for which payment may be made in whole or in part under a Federal health care program, or (B) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program." 42 U.S.C. § 1320a-7b(b)(2).

40.     In addition to the fact that such kickbacks constitute criminal violations, "a claim that includes items or services resulting from a violation of this section constitutes a false or fraudulent claim for purposes of" the FCA. 42 U.S.C. § 1320a-7b(g).

41.     Thus, any claim which arises from an unlawful kickback, such as a payment to an employee or other individual in exchange for a patient referral, or a payment to an individual as an incentive to become a patient, is a false and fraudulent claim which is not subject to reimbursement under Medicaid or any other federal health care program.

**BACKGROUND FACTS AND FRAUDULENT ACTS OF THE DEFENDANTS**

42.     Around January 2, 2017, Defendant Yolanda Burnom contacted the Relator with a proposed job offer. Ms. Burnom told the Relator that she was starting a business that would begin operations once it was approved by the State of Louisiana. Ms. Burnom offered to pay the Relator $20 per hour to work for her, which the Relator accepted.

43.     The Defendants received approval from the State of Louisiana to begin operating in late June 2017. The Defendants' business was purported to be providing behavioral health and mental health counseling services to residents in the Caddo Parish and Bossier Parish communities.

44.     During the first two months of her employment with the Defendants, the Relator provided services to a group of female patients who were living at what was purported to be a women's shelter and recovery house that was being operated out of an old Budgetel hotel in Bossier City by

a group called "Women of Diversity," which was run by Brenda Hills (also referred to by Burnom as Brenda Hall).

45.     Burnom told the Relator that Ms. Hills would refer patients to the Defendants in exchange for money paid under the table. According to Burnom, the Relator did not need to talk to Ms. Hills about payments in exchange for referrals, because "she and I already had something worked out."

46.     The Relator regularly saw these individuals, who had been referred to the Defendants by Ms. Hills in exchange for payment, until the shelter was shut down on August 31, 2017, when Ms. Hills was arrested for monetary instrument abuse, theft, and fraud.

47.     The Relator attempted to contact and continue providing services to her clients by going around to various shelters to locate them. Through her efforts, the Relator was able to locate some, but not all, of her clients to continue providing services to them.

48.     The Relator informed the Defendants of her inability to locate all of her former clients, but, despite that, the Relator understands that the Defendants continued to bill for not only the clients she was able to locate and continue servicing, but also for the individuals she was unable to locate and who therefore did not receive any further services from the Defendants.

49.     Throughout the Relator's employment, Burnom communicated with her employees, including the Relator, by text message and e-mail. In these text messages and e-mails, Burnom instructed her employees to pay potential patients as an incentive to sign up with Community Health.

50.     For example, on June 26, 2017, Burnom instructed the Relator to sign up a group of children and to give the grandmother of the children $100.00 for each child as an incentive for signing up with them.

14

51.    The Relator has knowledge of multiple clients who signed up with the Defendants as a result of being provided with cash payments.

52.    In addition to providing cash or other incentives to individuals to sign up as patients of the Defendants, Burnom also advised her employees that they would receive bonuses (i.e., kickbacks) based on the number of individuals they signed up.

53.    Burnom initially advised the Relator on June 22, 2017, that for each 20-30 people the Relator signs up for the program, the Relator would receive a $5,000.00 to $10,000.00 bonus.

54.    Once Burnom realized that the reimbursement rate was far lower than she originally thought it was, she backed off of that statement in text messages to her employees. On July 7, 2017, she informed her employees that "I made a mistake …. Okay, your bonus won't be as Huge as we initially discussed… It will be a nice size but here is why… They don't pay the $400 a day that [I] thought they paid for a crisis. They only pay close to that amount on the initial crisis day. Then it drops significantly lower." Burnom specifically identified the codes that would be billed for the initial crisis day and subsequent visits. She explained that "you only get the S9485 amount for the [first] day[,] then you get the H2011 for the rest of the days."

55.    The "crisis" that Burnom was referring to was "Crisis Intervention Services," and specifically services provided under CPT code S9485, which is for "crisis intervention per diem." According to the LDH fee schedule dated December 27, 2016, the fee at that time for this CPT code ranged from $278.05 to $353.65, depending on which modifier was applied to the code based on the degree level of the individual providing the service. However, Burnom realized that the actual fee that would be paid for subsequent visits was not the same as an initial visit, but rather it was a lesser reimbursement rate under CPT code H2011 (crisis intervention follow up).

Reimbursement under that code at that time ranged from $23.17 to $31.69, again based on the degree level of the individual providing the follow up service.[3]

56.    Despite her realization that she could not pay per-patient bonuses at the rate she originally promised, Burnom still committed to paying her employees based on the number of individuals who were signed up and approved for reimbursement by Medicaid. In a text message to her employees on July 10, 2017, Burnom explained that "[i]f you sign up 50 people and only 1 get approved and they only approved for one day of service. Then your bonuses is based on that 1 approval and hopefully one day of service. . . . I already sent a text out about my mistake.. (miscalculated) thought [it] was $400 a day for 14 days for all etc… I was wrong!"

57.    The Defendants were aware that their scheme was inappropriate and specifically instructed their employees on how to obtain reimbursement from Medicaid without having to provide services to the individuals who had signed up for mental health and behavioral health services with the Defendants. For example, on or about July 2, 2017, Burnom e-mailed the employees to make them aware that "[i]nsurance companies are now calling people homes asking have they been seen.. so, keep that in mind.. **see them for 1 min if need be but see them**." (Emphasis added). She further encouraged bribing patients with food when they visit for that one minute to ensure they will be able to remember the visit when insurers call, specifically advising her employees to bring "them a coupon for a free Sno cone and [kool] aid pickle."

58.    The Defendants specifically targeted individuals who had coverage under Medicaid , and further directed their efforts not based on the medical need of their patients, but rather by focusing

---

[3] "Specialized Behavioral Health Fee Schedule Changes" and "Specialized Behavioral Health Services - CPT Revised 12.27.16," available at
https://ldh.la.gov/assets/docs/BehavioralHealth/SpecializedBehavioralHealthFeeScheduleRevised12.27.16.pdf.

on the individuals they believed would give them the quickest and easiest path to payment under Medicaid.

59.    The Defendants instructed their employees regarding which patients the employees should see, how often they should see them, and when they should stop seeing them, based solely on the likelihood and potential amount of reimbursement that could be obtained from the Medicaid Program.

60.    The Defendants knew that no actual medically necessary or beneficial services were being provided by their employees, and in fact the Defendants specifically instructed their employees to limit time spent in visits solely to defraud Medicaid and other insurers into believing that these services were being provided.

61.    In continuation of the above fraudulent conduct, the Defendants submitted claims for reimbursement to Medicaid and other insurance programs for behavioral health and mental health services which were not actually performed by the Defendants or their employees.

62.    After the Relator contacted the Louisiana and federal governments and provided information and documentation regarding the Defendants' fraudulent acts, the government investigated the Relator's allegations, which confirmed that the Defendants wrongfully received reimbursement from the Medicaid Program through the false and fraudulent claims that were submitted by the Defendants.

63.    Specifically, during the Relator's employment and thereafter, the Defendants fraudulently submitted claims to Medicaid for services that were not actually provided, for which they wrongfully obtained reimbursement under CPT codes S9485 and H2011 (crisis intervention);

H2017 (PSR); H0036 (community psychiatric support and treatment); 90832, 90834, 90837, and 90839 (psychotherapy); and 90791 and 90792 (psychiatric diagnostic evaluation).

64.    Between June 2017 and July 2020, based on the government's investigation that was conducted as a direct result of the Relator's report of the Defendants' conduct, the Defendants wrongfully obtained payment in excess of $13.5 million from the Medicaid Program for claims that were knowingly and fraudulently submitted by the Defendants for these services that were not actually provided.

65.    In addition, a significant number of the Defendants' patients were unlawfully acquired through kickbacks, including payments made to employees or other persons as compensation for patient referrals, as well as for payments made directly to individuals as an incentive to become patients of the Defendants. Each claim submitted for every patient who was signed up as a result of kickbacks constitutes a false and fraudulent claim which is not eligible for reimbursement from Medicaid or any other federal health program.

## COUNT ONE
## FALSE CLAIMS ACT—PRESENTATION OF FALSE CLAIMS

66.    Relator realleges and reincorporates all of the foregoing allegations of this Complaint as if fully set forth herein, and in addition alleges:

67.    In performing the acts described above, including the payment of kickbacks and other incentives to employees, patients, and others for patient referrals and sign-ups, as well as the submission of claims for services not rendered, the Defendants through their own acts or through the acts of their officers, knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(l)(A). These claims were paid for with Medicaid or other federal health care funds.

68.     The United States, unaware of the foregoing circumstances and conduct of the Defendants, made full payments, which resulted in its being damaged in an amount to be determined.

## COUNT TWO
## FALSE CLAIMS ACT—FALSE STATEMENTS

69.     Relator realleges and reincorporates all of the foregoing allegations of this Complaint as if fully set forth herein, and in addition alleges:

70.     In performing the acts described above, including the payment of kickbacks and other incentives to employees, patients, and others for patient referrals and sign-ups, as well as the submission of claims for services not rendered, the Defendants through their own acts or through the acts of their officers, knowingly made, used, or caused to be made or used, a false record or statement to get false or fraudulent claims paid or approved by the United States Government in violation of 31 U.S.C. § 3729(a)(1)(B).

71.     The United States, unaware of the foregoing circumstances and conduct of the Defendants, made full payments, which resulted in its being damaged in an amount to be determined.

## COUNT THREE
## FALSE CLAIMS ACT—CONSPIRACY

72.     Relator realleges and reincorporates all of the foregoing allegations of this Complaint as if fully set forth herein, and in addition alleges:

73.     In performing the acts described above, including the payment of kickbacks and other incentives to employees, patients, and others for patient referrals and sign-ups, as well as the submission of claims for services not rendered, the Defendants through their own acts or through the acts of their officers, collectively conspired to intentionally commit the violations of the FCA set forth in this Complaint, including (1) conspiracy to knowingly present, or cause to be presented,

false or fraudulent claims for payment or approval; (2) conspiracy to knowingly make, use, or cause to be made or used, a false record or statement to get false or fraudulent claims paid or approved by the United States Government; and (3) conspiracy to knowingly use false records and statements to conceal their obligation to reimburse the federal Government for monies improperly retained, in violation of 31 U.S.C. § 3729(a)(1)(C).

74.    The United States, unaware of the foregoing circumstances and conduct of the Defendants, made full payments, which resulted in its being damaged in an amount to be determined.

75.    Defendants' participation in a conspiracy to defraud the government renders them jointly and severally liable for the total amount of loss suffered by the government and the total amount of civil penalties. *United States ex rel. Washington v. Morad*, 2017 WL 1250912, at *2 (E.D. La. Apr. 5, 2017).

## COUNT FOUR
## FALSE CLAIMS ACT—REVERSE FALSE CLAIMS

76.    Relator realleges and reincorporates all of the foregoing allegations of this Complaint as if fully set forth herein, and in addition alleges:

77.    In performing the acts described above, including the payment of kickbacks and other incentives to employees, patients, and others for patient referrals and sign-ups, as well as the submission of claims for services not rendered, the Defendants knowingly used false records and statements to conceal their obligation to reimburse the federal Government for monies improperly retained, in violation of 31 U.S.C. § 3729(a)(1)(G).

78.    Through Defendants' actions of improperly retaining funds to which they are not entitled, the United States has been deprived of the use of these monies and is entitled to damages in an amount to be determined.

## COUNT FIVE
## FALSE CLAIMS ACT—MEDICARE AND MEDICAID PROGRAM INTEGRITY

79.    Relator realleges and reincorporates all of the foregoing allegations of this Complaint as if fully set forth herein, and in addition alleges:

80.    In performing the acts described above, including the payment of kickbacks and other incentives to employees, patients, and others for patient referrals and sign-ups, as well as the submission of claims for services not rendered, the Defendants received overpayment of funds from the federal government that were not owed to Defendants. Defendants' failure to inform the necessary parties of the overpayment and failure to return the overpayment is a violation of the FCA, pursuant to 42 U.S.C. § 1320a–7k(d) and 31 U.S.C. § 3729.

81.    Through Defendants' actions of improperly billing for services not actually provided and retaining overpayments of funds to which they are not entitled, the United States has been deprived of the use of these monies and is entitled to damages in an amount to be determined.

## COUNT SIX
## VIOLATION OF THE LOUISIANA MEDICAL ASSISTANCE PROGRAMS INTEGRITY LAW—FALSE OR FRAUDULENT CLAIMS

82.    Relator realleges and reincorporates all of the foregoing allegations of this Complaint as if fully set forth herein, and in addition alleges:

83.    This is a qui tam action brought by Relator and the State of Louisiana to recover treble damages and civil penalties under MAPIL, La. R.S. 46:437.1 *et seq.*

84.    La. R.S. 46:438.3 provides, in part:

A. No person shall knowingly present or cause to be presented a false or fraudulent claim.

B. No person shall knowingly engage in misrepresentation or make, use, or cause to be made or used, a false record or statement material to a false or fraudulent claim.

21

C. No person shall knowingly make, use, or cause to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the medical assistance programs, or to knowingly conceal, avoid, or decrease an obligation to pay or transmit money or property to the medical assistance programs.

D. No person shall conspire to defraud, or attempt to defraud, the medical assistance programs through misrepresentation or by obtaining, or attempting to obtain, payment for a false or fraudulent claim.

85.     Defendants violated La. R.S. 46:438.3 by engaging in the fraudulent and illegal practices described herein, including the payment of kickbacks and other incentives to employees, patients, and others for patient referrals and sign-ups, as well as the submission of claims for services not rendered, the and thereby (1) knowingly presented or caused to be presented a false or fraudulent claim; (2) knowingly engaged in misrepresentation or make, use, or cause to be made or used, a false record or statement material to a false or fraudulent claim; (3) knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the medical assistance programs, and/or knowingly concealed, avoided, or decreased an obligation to pay or transmit money or property to the medical assistance programs; and (4) conspired to defraud, or attempted to defraud, the medical assistance programs through misrepresentation or by obtaining, or attempting to obtain, payment for a false or fraudulent claim as described herein.

86.     As a result of the conspiracy committed by all Defendants, they are liable *in solido* for all damages, penalties, and other amounts for which they are found responsible.

87.     The State of Louisiana, by and through the Louisiana Medicaid Program, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

88.     Compliance with applicable Medicare, Medicaid, and the various other federal and state laws cited herein, including the Anti-Kickback Statute, was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Louisiana in connection with Defendants' fraudulent and illegal practices.

89.     Had the State of Louisiana known that Defendants were violating the federal and state laws cited herein, including the Anti-Kickback Statute, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

90.     As a result of Defendants' violations of La. R.S. 46:438.3, the State of Louisiana has been damaged in an amount to be determined.

91.     Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to La. R.S. 46:439.l(A) on behalf of herself and the State of Louisiana. The Relator previously provided evidence and information regarding the Defendants' fraud to the State of Louisiana prior to the initiation of the investigation conducted by enforcement agencies and is therefore the original source of this information.

92.     This Court is requested to accept supplemental jurisdiction of this related state claim, as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Louisiana in the operation of its Medicaid program.

## PRAYER FOR RELIEF UNDER THE FEDERAL FALSE CLAIMS ACT

93.     Relator realleges and reincorporates all of the foregoing allegations of this Complaint as if fully set forth herein, and in addition alleges:

94.     Relator respectfully requests that this Court enter judgment against Defendants, Community Health Care Solutions, LLC, Yolanda Burnom, and the Estate of Yolanda Burnom, as follows:

   a) That the United States be awarded damages in the amount of three times the damages sustained by the United States because of the false claims and fraud alleged within this Complaint, as provided by the FCA, 31 U.S.C. § 3729 *et seq.*;

   b) That civil penalties of up to $27,018.00, or the maximum allowed under the law, be imposed for each and every false claim that Defendants presented to the United States;

   c) That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which Relator necessarily incurred in bringing and pressing this case;

   d) That the Court grant permanent injunctive relief to prevent any recurrence of violations of the FCA for which redress is sought in this Complaint;

   e) That Relator be awarded the maximum percentage of any recovery allowed to her pursuant the FCA, 31 U.S.C. §3730(d)(l) and (2);

   f) That the Defendants be held liable *in solido* for all damages, penalties, attorney fees, and other amounts for which they are found responsible; and

   g) That this Court award such other and further relief as it deems proper.

   h) A JURY TRIAL IS HEREBY DEMANDED FOR ALL COUNTS AND ALL ALLEGATIONS CONTAINED IN THIS COMPLAINT.

## **PRAYER FOR RELIEF UNDER THE LOUISIANA MEDICAL ASSISTANCE PROGRAMS INTEGRITY LAW**

95.     Relator realleges and reincorporates all of the foregoing allegations of this Complaint as if fully set forth herein, and in addition alleges:

96.    Relator respectfully requests that this Court enter judgment against Defendants, Community Health Care Solutions, LLC, Yolanda Burnom, and the Estate of Yolanda Burnom, as follows:

a) That the State of Louisiana be awarded damages in the amount of three times the damages sustained by the State of Louisiana because of Defendants' fraudulent and illegal practices, as provided by La. R.S. 46:438.1 *et seq.*;

b) That civil penalties of up to $27,018.00, or the maximum allowed under the law, be imposed for each and every false claim that Defendants caused to be presented to the State of Louisiana, pursuant to La. R.S. 46:438.6;

c) That the maximum rate of legal interest allowed be awarded from the date of damage to the date of repayment, along with reasonable attorneys' fees, costs, and expenses which the State of Louisiana and Relator necessarily incurred in bringing and pressing this case, pursuant to La. R.S. 46:438.6 and 439.4;

d) That Relator be awarded the maximum percentage of any recovery allowed to her pursuant to La. R.S. 46:439.4, and/or any other applicable provision of law;

e) That the Defendants be held liable *in solido* for all damages, penalties, attorney fees, and other amounts for which they are found responsible; and

f) That this Court award such other and further relief as it deems equitable and just.

g) A JURY TRIAL IS HEREBY DEMANDED FOR ALL COUNTS AND ALL ALLEGATIONS CONTAINED IN THIS COMPLAINT.

Respectfully submitted:
Simien & Simien, L.L.C.
Attorneys and Counselors at Law
7908 Wrenwood Boulevard
Baton Rouge, Louisiana 70809
(225) 932-9221; (225) 932-9286 (fax)


_____*s/ Roy Bergeron, Jr.*_____
By:    Eulis Simien, Jr. (T.A.), Bar # 12077
       eulissimien@simien.com
       Jimmy Simien, Bar # 01598
       jimmysimien@simien.com
       Roy L. Bergeron, Jr., Bar # 33726
       roybergeron@simien.com

*Attorneys for Relator/Qui Tam Plaintiff*
*Tangela Alexander*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on the 10th day of February, 2023, a copy of this Complaint and Disclosure Statement was served on the individuals below by United States Mail, and a PDF copy of the Complaint and case initiating documents were e-mailed to the Clerk for the U.S. District Court for the Western District of Louisiana.

The undersigned further certifies that on this 14th day of February, 2023, a sealed event was opened on PACER, and a copy of the foregoing Complaint, with case number included, was again served on the individuals below by United States Mail, first class postage affixed, to U.S. Attorney Brandon B. Brown, U.S. Attorney General Merrick B. Garland, Louisiana Attorney General Jeff Landry, and Louisiana Department of Health Secretary Dr. Courtney N. Phillips, at the addresses below:

> Hon. Brandon B. Brown
> United States Attorney
> Western District of Louisiana
> U.S. Attorney's Office
> 300 Fannin Street, Suite 3201
> Shreveport, LA 71101
>
> Hon. Merrick B. Garland
> Attorney General of the United States
> United States Department of Justice
> 950 Pennsylvania Avenue, NW
> Washington, DC 20530-0001
>
> Hon. Jeff Landry
> Louisiana Attorney General
> Louisiana Department of Justice
> Post Office Box 94005
> Baton Rouge, LA 70804
>
> Secretary Dr. Courtney N. Phillips
> Louisiana Department of Health
> Post Office Box 629
> Baton Rouge, LA 70821-0629

> _s/ Roy Bergeron, Jr._
> ————————————————————
> Roy Bergeron, Jr.